017-1499 Allergan Sales v. Sandoz. Mr. O'Quinn, please proceed. Thank you, Judge Warren. May it please the court, John O'Quinn on behalf of Sandoz. Under the District Court's ruling, only the 425 patent stands in the way of generic competition. So I'd like to focus my opening argument on that patent and why it is both not infringed and should be found invalid. And that patent has not previously been subject to litigation, so there are no collateral issues that relate to it. Instead, the questions presented with respect to the 425 patent are simply whether the District Court was correct to find that a claim specifically requiring 0.5% Timolol-free base can be literally infringed when Timolol-free base is not used as an ingredient and 0.5% Timolol-free base does not even form in the resulting solution. And whether as to invalidity, claiming the observed results from administering an obvious composition dosed in an obvious manner can save the claim from being found obvious. The answer to both should be no. Now, non-infringement respectfully begins and ends with the plain language of the claim term, which requires 0.5% by weight Timolol-free base. And the history surrounding this patent and the entire family of patents forecloses the argument that when the claim specifically says 0.5% Timolol-free base, that that includes a different chemical compound, namely Timolol malate. The patent team knew how to claim or to refer to Timolol more broadly or more generically, and it did so in five other patents, including the 149 and 976 that are before the court, as well as the 258, 409, and the 890, which were previously asserted but dismissed prior to trial. And in fact, the 258 patent draws, I think, very specific distinctions between Timolol-free base and Timolol malate. They're directly relevant to the issue of infringement. The 258 patent gives specific examples where 0.5% Timolol-free base is used instead of Timolol malate. And the 258, that's at Appendix 2378, and the 258 patent specifically says this distinction results in a superior product. At 2375, it says that compositions having a combination of the free base and bromonidine tartrate are more stable than the combination of Timolol malate and bromonidine tartrate. So you have a specific distinction in the related family of patents between Timolol malate and Timolol-free base. And that makes this case look very much like the disreport decision in V v. Lupin, which this court affirmed. In that case, the court recognized and drew specific distinctions where you have claims that identify base versus salt and where you have differences in the handling properties. But all of those are present here. And for these reasons, the district court simply erred as a matter of law in concluding that there was infringement because there is no Timolol-free base that is used in ingredient or that forms in solution. And there's nothing in the documents that are ultimately inconsistent with that. And in particular, to the extent the court's got questions about some of the documents, I'd point you to the exchange with Allergan's expert at trial at 2708 to 2709. And it specifically explains what it means when people refer to the 0.68 Timolol malate corresponding to 0.5 Timolol or 0.5 Timolol-free base. And that exchange, their expert agreed that all that's happening here is the mathematics of adding up the weight of the atoms and allocating them either to the acid or the base. And that this is a, quote, mathematical exercise. But with the ingredients still going in, their expert was specifically asked, it's still Timolol malate salt, correct? And the answer was yes. And that's at 2709. So for these reasons, I think that the district court's decision of non-infringement simply is not sustainable. Similarly, the decision on the 425 patent with respect to obviousness should also be reversed because this is exactly presenting what this court said in Santaris for, excuse me, 649 F3rd at 1354, you cannot do. You have an obvious formulation, and it cannot become non-obvious. Can I ask you this? There are a lot of claims here, and I get a little confused. But the actual product from your competitor has, I mean, we're talking about two main ingredients. It is the 0.2 percent of the, I can't say this word, bromine, bromine and tartrate. Yes. In that form. Correct. And then the 0.68 of the Timolol malate. Is there not a claim that includes both of those terms together? Is that the problem here? Because some of the claims have one of them, some of them have the other. Correct. Is this just a claiming problem? Because everybody knows what the composition is. The composition was found, I believe, invalid by us last time around. That's exactly right. The composition was, in the force 63 patent, was invalidated. But we found valid a certain method claim, and the district court found valid a certain method claim here. But now you're saying even if those method claims are valid, and I know you have arguments as to whether or not, there's not a single method claim that includes the bromidine tartrate and the Timolol malate in the same amounts that are in the product together. That's exactly right, Judge Hughes. There is fundamentally a claiming problem here. And Allergan has gone out and continued to get new patent after new patent. And, in fact, they have now gotten patents that specifically refer to. So I thought that was what this was getting at, but I'm a little troubled by that because the bigger, the other claims we have here, nobody, I mean, the specification, I mean, pretty much when it's talking about the product that is the pharmaceutical one on sale, is talking about the combination we're talking about, right? There's no real dispute that the specification discloses the tartrate and the malate forms in the right amount. So there's larger claim language that then just refers to, Brian, how do you say that again? Bromidine. Bromidine and Timolol without specifying whether it's the free base or the salt forms. It just seems to me really problematic that even though they've said those words in the specification that talks about them in the right amounts, that that shouldn't be the right claim construction of those terms. There's no real dispute about what the product here is. And your ANDA is the same thing because it has to be. Sure. Our ANDA is tracking the NDA, but, of course, whether or not the NDA drug is covered by the claims is a separate question. And respectfully, that was exactly the issue that was before this court when it affirmed the district court in the Aviv case. That was exactly the argument that was made. And ultimately, the court concluded that there you had a claim that required a specific chemical and that that was the free base and that that wasn't what was being used. What was being used in it was what was disclosed in the patent and in the NDA was the salt. I get that. But in the other claims, and I know this is their cross appeal, but I think they're all kind of mashed up together in a certain sense. They don't specifically call out the free base or the salt. Why isn't the proper claim construction of those broader terms the one that corresponds to the specification for the common agreement? And just to be clear, I mean, so I think that this all, what you're asking goes to the claim one of the 976 and claim four of the 149 because those, as you say, they refer to Temelol and to Brimonidine. They don't refer to a specific salt or a specific free base. Let me ask you this to make it really clear. If they had asked for and gotten a claim construction that says in either of those claims that Brimonidine means 0.2 percent of the salt and that Temelol means 0.68 percent of the salt reduced to 0.5 percent Temelol, if those were the claim constructions, would you infringe these method claims assuming they're valid and everything? Because your product has 0.2 percent of the tartrate version and 0.68 percent of the salt that reduces to five. Sure. So I think that if Brimonidine was interpreted as being Brimonidine tartrate, that element would be met. The problem that you then run into is it doesn't just say any amount of Temelol or Temelol malleate. It says 0.5 percent. And so if that was interpreted as 0.5 percent Temelol free base as opposed to just Temelol, then we'd have the same non-infringement argument that we have with respect to the 425 patent. And I don't think that you can reasonably construe 0.5 Temelol to mean 0.68 Temelol malleate. And indeed, the very distinction between malleate and free base is what's discussed in the 258. Even though that's what's in the product. Even though that's what is ultimately in the NDA product. It would have had to say in the claims 0.68 Temelol malleate. Correct. And they have pursued patents that use now 0.68 Temelol malleate as well. And to the point that you're asking about, and again, just to be clear, the district court found that the 149 and the 976 patents were not infringed. And they're not infringed because he adopted, I think, a very reasonable claim construction that treated these terms. Okay, I don't think I agree with that statement. I don't see how it could be reasonable to say they can either be all salts or they can be base only. I don't see how that would give the world notice as to what's being claimed. I don't think that claim construction is reasonable. It doesn't hurt you, so make sure you're listening to my question because it's not a hostile question. No, no, no. I just don't see how you could defend that claim construction as clearly correct. Let me come at it a slightly different way, Judge Moore, and I don't want to eat too much into my rebuttal time. But I think the point he's making, and it commits 1539, and this is the only point that I'm meant to make, is that he says there's no reason to treat Temelol term and the bromonidine term differently. Yes, but I'm just wondering how a patentee can get both out of this claim. How in the world do you get the salt form at 0.2 and 0.5 and the base only form at 0.2 and 0.5 out of this claim language? And that's what his construction really amounts to. Well, I think what is ultimately being driven at there— That's like saying I'm going to weigh you naked, I'm going to weigh you with your clothes, and if in either case you weigh 165 pounds, you infringe. I don't actually think that's what he meant, and it's certainly not how it was applied at trial. Okay, 0.5 milliliters of vodka in a screwdriver, 0.5 milliliters of orange juice in vodka in a screwdriver. I understand the question, and the only point that I'm getting at is I think that his construction— I'm now hungry for something salty and would also like a cocktail at the same time. I don't think I can top that, Judge Moore. All right, sit down and we'll save your rebuttal time. All right, thank you. Go ahead. May it please the court and the practice of patent law will drive all of us to drink to your honor. I want to start with the 425 patent and get us back to the evidence. I mean, the case law is that the ANDA—we have lots of cases from this court— that the ANDA governs the infringement inquiry, and the assignment of error that's being asked for here on the 425 patent would ask the court to basically say that an ANDA that says the composition has 0.2% Vermontian tartrate and 0.5% Tymol base, which is what the claims require, does not have that. We're talking about assays that were run and submitted to the FDA, and you can tell it's not a shorthand because sometimes we saw on the record sometimes people are using these terms as shorthand. But the ANDA doesn't say the ingredient is Tymolol-free base. It says the ingredient is 0.68% of the malleate that reduces to 0.5%. Well, the question for the construction judge—actually, it talks about the initial ingredient. We're talking about the thing that's on the table, the powder. I think I would agree with you, Your Honor, but that— what the composition by those of skill in the art contains, that's what the claim requires, a composition of 0.2% Vermontian tartrate and 0.5% Tymolol-free base. Yeah, but you stood up and said the ANDA says 0.5% Tymolol-free base, but it doesn't, right? Well, Your Honor, that would beg to differ, and we would point to the testing that was submitted as part of the quality overall summary from the ANDA. Wait, can you show us the chart? There's the chart. The chart is at 4, 2, 3, 6. That's where it talks about the 6.83 malleate is equivalent to the 5-milligram Tymolol base. I'm sorry, what page was that? I believe I have it as 4, 2, 3, 6, Your Honor. And I think that's the chart that you're referring to. Yeah, this was in the brief. Right, right, but then also, and so the question is whether the composition can be, actually has, right, the 0.5 milligram Tymolol base, and they actually test that composition as part of their ANDA, and this is also in the briefs, Your Honor. And if you go, it's a big appendix. I believe I want to say it's the second volume or the third volume. Is this the same chart that's in the brief? The side-by-side? Yeah. And is it in your brief or is it in their brief? It's in our brief, Your Honor. Okay. It is, on page 13. And what is this chart from? This is from the ANDA. It's talking about the ingredients. And it talks about the, it says, ingredient, Tymolol malate, 0.5% as Tymolol base. And that's what is in the composition. That's what is described as in the composition, which we are measuring against the claims. And I was referring to, Your Honors, to This is incredibly confusing, this chart, because it, on the ingredient list it says Tymolol malate, and it has a footnote 1 that says 6.83 milligrams Tymolol malate is equivalent to 5. So that, if I'm reading that, says you're putting in 6.83 milligrams of the malate. Right, you're putting in 6. That's correct, but it's, at the same time One of the things I feel like you're really somehow glossing right over is my understanding, and I can profess to understand very little in this case, but it is my understanding that Tymolol base is not the same thing as Tymolol free base. No, that is not correct. The Tymolol base and Tymolol free base, as present in the Tymolol malate, are the same thing. That is, there was no argument that there was a distinction between Tymolol base as formed between the Tymolol, as the part of the Tymolol malate. I even remember an expert admitting that he didn't know how much free base was in something. Again, the ANDA assay shows that it's 0.5% Tymolol base. And I'm referring to Appendix 4241. And this is where Dr. Tanna, excuse me, Sandoz experts admitted that this was what was in solution in the actual product. And that is a test where they assay the actual composition. And that's what the claim requires, what's in the composition. And they come out with, they're monitoring tartrate at 0.201 to 0.204% in the various bottles that they tested. A five milliliter bottle and a larger bottle. And then they assay Tymolol base at 0.505 and 0.507. That is what they tested and told the FDA was in their composition as the composition is going to be sold, in the bottle. That is what is in the bottle. And they did that in the stability test as well, which is found in Appendix 4313. And the 30B6 witness for Sandoz also admitted that at his deposition. That's what he said at Appendix 26 of 33. So the question of what the powder is, I think, is sort of, it's putting the focus in the wrong place. The question is what do persons of skill in the art, infringement is governed by that standard, believe to be or understand to be in the composition. Okay. So why don't you turn to Appendix Page 2713. Hang on one moment. It's Volume 2. 2713, Line 9. Okay. Have you done anything to determine how much would be in the free base form? I have not performed a personal experiment. Okay. And some of it might be floating around in there as a Tymolol cation, right, in theory. In fact, maybe a lot of it would be in that form. Is that fair? I can't agree with that. But the answer, though, Your Honor, to that is Sandoz did the tests. The expert, Allergan, in the case law, the infringement inquiry is answered by the ANDA. Allergan is not required to do a test of what's in there to somehow confirm what Sandoz says in its ANDA. Where is there proof that free base and base is exactly the same thing? Because I understood one of them to be a charged version and the other one not to be. I don't get this chemistry stuff perfectly, so I could be wrong. But I also saw your expert on 2787 saying something similarly about a difference between Tymolol free base. And so, I mean, I've tried to dive into this record, so I'm just trying to understand whether I should read that ANDA or whether it's proper technically to read that ANDA the way you suggest. If it said Tymolol free base, game over. But it doesn't. So, Your Honor, you can see in the patent the term free base is used in So, you're talking about the base component of the Tymolol maliate versus the free base, if you will, as somehow distinct. In the depiction, excuse me, in the chart listing Combigan, in example, I think it's example two of the specification, example one, it talks about the .68 Tymolol maliate and it says equivalent to .5 Tymolol free base. That is the same as the base the experts were talking about at trial, the Tymolol base, the Tymolol free base, is a reference to the base component of the salt. And the assay, as I described, in the ANDA, talks about the Tymolol base. Wait, didn't what he say is it would be, quote, equivalent to? That's my understanding. The patent says equivalent to Tymolol free base. So, you were asking, Your Honor, your question was the base and the free base something different. That's what I was trying to answer. Not the equivalent issue it was talking about. And the patent treats the two as the same. I do want to address just the cross appeal. Can I just? Sure. I'm still a little skeptical on this 425. I mean, I understand. They have the same composition as you do. Yes, they do. But the claim terms are all over this place. I don't understand why you don't have a claim term that exactly matches up the ingredients that you're using. I think we thought we did and we think we do. And that goes to. Let me ask you this. And I don't know the answer to this, which is why I'm asking. I don't even know if there's anything on the record. Is it possible that if you start with putting in .5% free base of Tymolol into making this composition, you don't end up in the same place? I.e., does the choice to use the salt form that's larger than the .5% have a difference than just using the Tymolol free base? And I think the concentration of the free base in the product would be identical. I think that is what the record reflects. It's not that the difference when you put the salt form as you have some portion of the salt is in solution. So if that's the case, why are you using the salt instead of the free base? That is the salt that's available, that's commercially available, that has been traditionally used. Then why didn't you say use the salt? I'm not trying to be coherent. The arguments on both sides of these seem to be kind of hyper-technical and obviously trying to find infringement or non-infringement. But if I'm reading the plain language of this claim, you've used Tymolol, Tymolol free base, all these different terms differently throughout, but yet you want us to construe it the same way. I'm sorry, I'm filibustering, but I have to take some significance to the fact that you chose to use the word Tymolol free base here, and maybe in other cases you only used the word Tymolol. Did you ever use the word Tymolol, is it Maliate? Yeah, Maliate. Did you ever use the phrase Tymolol Maliate in any of these claims? I believe there are some claims that were disclaimed that used the term Tymolol Maliate. And did they ask for 0.68%? No, they were 0.5. Which wouldn't reduce to 0.5% Tymolol. That's right, that would not be infringed. You asked why, and there's a historical reason here. That's what's going on here. You asked why did they get a 0.2 to 0.5 claim, because that's how the product is labeled. When you pull the and the label, when you pull the com again label, it talks about 2 milligrams per kilogram, or monodium tartrate. So the other claim you were talking about that you said that was disclaimed, that you used 0.5% of the Maliate, wouldn't cover your product. That's correct, that was disclaimed. But that, you asked why. This is not a case on a fresh playing field. These products were in existence before, and these numbers and terms were in existence before. And 0.5 strength, Tymolol, has always been the way persons of skill in the art have referred to the product with the 6.8 or the 0.68. I get that, but I'm not sure how that helps you. I don't want to meet a dead horse, but you didn't use the word Tymolol here with the understanding that the 0.5 is referring to this specific amount. Instead, you went ahead in this one and used the word Tymolol Freebase. Right, and that was to get at the claim construction issue. But if you're really getting at the claim construction problem, why didn't you say, because this is what your product actually uses, 0.68 Tymolol Maliate? Because we had an admission that the product had 0.5 Tymolol Freebase and an admission it had 0.25%—excuse me, 0.2% Vermodening tartrate. And that was why. And we have added documents that say that, Your Honor, that test it in that way. I did want to address—I wanted to save a minute or so for any rebuttal on the cross-appeal points and simply raise the issue of issue preclusion and the prior litigation with respect to the other patents. If, in fact, the court reaches those other patents and the obviousness, this is the exact same arguments that were raised before that were litigated here again. And with that, I will save the remainder of my time. Okay. Thank you again, Your Honors. I want to come to the assay documents that he was referring to. And you can see this discussed at Appendix 2888. And it was very—a testimony from our expert was very clear that the assay doesn't say anything about the form of the Tymolol that is in the bottle. It's essentially the same mathematical, hypothetical exercise to come up with the number that they rely heavily on when they point to the assay documents. And this comes back to the point that Tymolol free base is not what forms in solution. And this is discussed extensively at 2787 to 2788. And what you get is the cation. It's the positively charged ion. It's not the free base. And that testimony was undisputed. There was no dispute that you're not going to get that amount of free base in solution. In fact, the testimony was it's just this mathematical exercise. That's at 2709. And their expert—and this comes to some of the language that Judge Moore was asking about. Why does the chart describe it as base then? So I think that Judge Hughes— Both of you describe it as Tymolol base. And so to be clear, of course, our ANDA, as is required by statute, is copying their NDA. So to the extent that there's question or confusion about what they meant, it's about what they meant. At the end of the day, I think all that they are saying is that 0.68 Tymolol maliate is going to give you the same amount of cation as 0.5 Tymolol free base might give you hypothetically if you subtracted away the acid amount and you did this hypothetical numerical exercise. But in fact, what you don't have is free base as a starting point. And this—you asked the question, Judge Hughes, does the form you start with matter? And if you look at 2375 and 2378, that's the related 258 patent. And the answer is yes, it matters. And they have claim four of that patent that specifically refers to Tymolol maliate. And then finally, their expert didn't test anything in solution. The court has our arguments on obviousness. But again, I would submit this case is just like Santaris. And with respect to the arguments about issue preclusion and claim preclusion, just so that there's no mistake, they never asserted that there was claim preclusion or issue preclusion on the issue of infringement of the 149 patent, or for that matter, the 976 patent. And with respect to the invalidity arguments, whatever you think regarding the 149, certainly the 425 patent has never been litigated before this court. They don't argue that any kind of issue preclusion or claim preclusion should apply there. If the panel has further questions, I'm happy to try to answer those, but I see my time is otherwise expired. Okay, thank you, Mr. O'Quinn. You saved rebuttal time, but it has to be limited to the cross appeal, and he didn't touch your cross appeal. So that concludes our case for today. Thank both counsel. Case is taken under submission. All rise.